UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUSTIN MICHAEL JOSEPH,<br><br>    Plaintiff<br><br>v.<br><br>PHILLIPS, et al.,<br><br>    Defendants | Case No.: 3:22-cv-00177-MMD-CSD<br><br>**Report & Recommendation of**<br>**U.S. Magistrate Judge**<br><br>Re: ECF No. 26 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 26, 26-1 to 26-15.) Plaintiff filed a response. (ECF No. 29.) Defendants filed a reply. (ECF No. 30.)

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is a pretrial detainee in the custody of the Washoe County Detention Facility (WCDF), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 3.) The court screened Plaintiff's FAC and allowed him to proceed with a Fourteenth Amendment claim for unsanitary conditions of confinement against defendants Deputies Phillips and Bush. Plaintiff alleges that the toilet and sink in his cell stopped working, and the toilet was full of feces and urine. Plaintiff claims he asked Phillips and Bush to move him into a cell with a working toilet, but they both refused. As a result, Plaintiff asserts that he spent 48 hours in a cell without a working toilet or sink, and had to eat all his meals during these

two days next to a toilet full of feces and urine. He avers that there were cells with working toilets and sinks available to house Plaintiff, and Phillips and Bush did not take any action to alleviate the unsanitary conditions. Instead, they intentionally ignored Plaintiff and refused to answer his requests for water or to use a bathroom. (ECF No. 4.)

Defendants move for summary judgment, arguing: (1) Plaintiff was not subject to unconstitutional conditions of confinement; (2) Defendants are entitled to qualified immunity; and (3) any official capacity claims must be dismissed with prejudice.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Fourteenth Amendment Conditions of Confinement

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Under the Due Process Clause, detainees have a right against jail conditions or restrictions that amount to punishment." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (internal citations and quotation marks omitted).

"Under both clauses, the plaintiff must show that the prison officials acted with 'deliberate indifference.'" *Castro,* 833 F.3d at 1068. Deliberate indifference under the Fourteenth Amendment involves an objective standard. *Id*. at 1069-70; *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) ("a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"). The elements of such a claim are:

4

>(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
>(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
>(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
>(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071; *see also Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (applying the same elements to a detainee's claim for denial of adequate medical care).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley*, 576 U.S. at 397 and citing Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*.

**B. Facts**

The following facts are undisputed unless otherwise noted:

Plaintiff was booked into the WCDF on June 24, 2021. (ECF No. 26-2.) His charges include soliciting a child for prostitution, attempted sex trafficking of a child, facilitating sex trafficking attempted kidnapping of a minor, and attempted child abuse/neglect. (ECF No. 26-2.)

Plaintiff was classified as a "medium" security inmate. (Decl. of Sam Van Der Wall, ECF No. 26-6 ¶ 5; ECF No. 26-7.) Due to the nature of Plaintiff's charges, there were limited areas within WCDF for Plaintiff to be housed because inmates charged with sex offenses are often targeted by other inmates and are victims of physical violence. As such, for his safety, Plaintiff's housing options were limited to Unit 6 or Unit 15, the latter being the protective custody unit. Plaintiff refused placement in protective custody in Unit 15; therefore, he was housed in Unit 6, cell 53. (*Id*. ¶ 6; Phillips Decl., ECF No. 26-9 ¶ 3.)

Unit 6 is a lockdown housing unit, meaning inmates do not have the ability to walk around the tier freely, and can only exit their cells at certain times such as designated tier times and to retrieve their meals. (Van Der Wall Decl., ECF No. 26-6 ¶ 7.)

Deputy Phillips was assigned to work the day shift (7:00 a.m. to 7:00 p.m.) in Unit 6 on September 5, 2021. (Phillips Decl., ECF No. 26-9 at 2 ¶ 2.) Plaintiff informed Deputy Phillips that earlier that morning his cell lost power, the sink in his cell did not have running water, and the toilet in his cell would not flush. The emergency light in his cell was still on. (*Id*. ¶ 4.) Deputy Phillips offered to see if Plaintiff could be moved to another cell, but told Plaintiff that he could not guarantee Plaintiff would be able to return to the same cell after maintenance fixed the issues in his cell. Plaintiff told Deputy Phillips he would wait to see if maintenance could fix his cell. Deputy Phillips told Plaintiff a work order would be submitted to maintenance. (*Id*. ¶ 5.) Unit 6 has a day room with a toilet and sink, and inmates can use the bathroom and sink and get water there. Deputy Phillips told Plaintiff let him know when he needed to get water or go to the bathroom and Deputy Phillips would let him out of his cell to do so. (*Id*. ¶¶ 5-6.) Deputy Phillips did not have authority to contact maintenance and did not have control over when maintenance responds to a work order or completes repairs. (*Id*. ¶ 8.)

After his discussion with Plaintiff, Deputy Phillips notified Sergeant Van Der Wall about the maintenance issues in cell 53 and three other cells (54, 55, and 56). Sergeant Van Der Wall told Deputy Phillips he would try to get in touch with maintenance. He also told Deputy Phillips to let Plaintiff out of his cell to get water or use the bathroom when needed. (*Id.* ¶ 7; Van Der Wall Decl., ECF No. 26-6 ¶ 8.)

Sergeant Van Der Wall was not able to contact maintenance about Plaintiff's cell on September 5, 2021, because maintenance staff was not scheduled to work that day, as they work Monday through Friday during regular business hours.[1] Sergeant Van Der Wall determined the maintenance issues did not constitute an emergency because the inmates in the cells without power could get water and use the bathroom in the day room until maintenance staff could fix the problem. (Van Der Wall Decl., ECF No. 26-6 ¶ 9.)

Deputy Phillips maintains that he let Plaintiff out of his cell multiple times throughout his shift on September 5, 2021, so he could get water and use the bathroom in the day room. He was also able to get water or use the bathroom during two tier times and two mealtimes. (*Id.* ¶¶ 9, 10.) In addition, Deputy Phillips' shift log notes that he completed 25 security checks during his shift, and each time he did so, he walked by Plaintiff's cell, and Plaintiff could have asked to use the bathroom or get water each time he walked by Plaintiff's cell. (*Id.* ¶ 10; ECF No. 26-10.)

Toward the end of his shift, Deputy Phillips told the night shift officer who replaced him (Deputy Michael Gould), that cells 53, 54, 55, and 56 lost power, and the water in the sinks was not working and the toilets would not flush. He asked Deputy Gould to submit a work order to maintenance so the issues in the cell could be fixed. (*Id.* ¶ 12.)

---

[1] The court also takes judicial notice of the fact that Monday September 6, 2021, was Labor Day, a federal holiday.

7

1    Deputy Gould was assigned to work the night shift (7:00 p.m. until 7:00 a.m.) on
2 September 5 to 6, 2021. (Gould Decl., ECF No. 26-12 at 2 ¶ 2.) Plaintiff told Deputy Gould that
3 his cell had lost power, his sink did not have running water, and his toilet would not flush.
4 Deputy Gould observed that Plaintiff's toilet was not overflowing, and the emergency light in his
5 cell was still functioning. Deputy Gould told Plaintiff to let him know during his security checks
6 if he needed to get water or use the bathroom and he would let him out of his cell to do so. (*Id*. ¶
7 3.) Deputy Gould informed a sergeant on duty about the maintenance issues in Plaintiff's cell,
8 and the sergeant told him to let Plaintiff out of his cell if he needed to get water or use the
9 bathroom. (*Id*. ¶ 4.) Deputy Gould's shift log indicates that he conducted security checks every
10 30 minutes during which Plaintiff could have asked to be let out of his cell to get water or use the
11 bathroom. Deputy Gould let Plaintiff out of his cell multiple times so he could get water and use
12 the bathroom, and he never denied Plaintiff the ability to get water or use the bathroom. (*Id*. ¶ 6;
13 ECF No. 26-13.) Plaintiff did ask Deputy Gould if he could move cells, and Deputy Gould told
14 him there was no room in the unit for him to move to another cell. (*Id*. ¶ 7.)

15    Deputy Gould submitted a work order to maintenance the night of September 5, 2021, for
16 the issues in these four cells. (*Id*. ¶ 8; ECF No. 26-4.)

17    Deputy Bush was assigned to work the day shift (7:00 a.m. to 7:00 p.m.) in Unit 6 on
18 September 6, 2021. (Bush Decl., ECF No. 26-14 ¶ 2.) At the beginning of his shift, he had a
19 discussion with Gould and was informed that four cells in the unit had lost power and a work
20 order had already been submitted to maintenance. (*Id*. ¶ 3.) During his shift on September 6,
21 2021, Deputy Bush let Plaintiff out of his cell multiple times to get water and use the bathroom,
22 and Plaintiff was also able to do so during tier times and meal periods. In addition, Deputy
23 Bush's shift log indicates he conducted 20 security checks during his shift, during which Plaintiff

could have requested to be let out of his cell to get water or use the bathroom. (*Id*. ¶ 4; ECF No. 26-15.)

It was ultimately determined that a tripped breaker from a bad light switch in cell 54 caused the power outage, and once the switch was replaced power was restored. (ECF No. 26-4.)

According to Sergeant Van Der Wall, on September 5 and 6, 2021, there were no available cells in Unit 6 that Plaintiff could be moved to. A maximum of two inmates are housed in one cell, and there are a total of 56 cells in Unit 6. Four cells in Unit 6 lost power between September 5 and 6, 2021. During these two days, 16 cells contained 1 inmate, but Plaintiff could not be housed with them for various reasons. Sergeant Van Der Wall reviewed the housing unit inmate history for Unit 6 as well as the classification and/or status for each inmate who occupied a single cell at that time, but there were no available cells in the unit to which Plaintiff could be moved. (*Id*. ¶ 10; ECF No. 26-8.) The inmates either had different security classification than Plaintiff, had mental health issues, were in administrative status, or worked in the unit so the inmates could not be housed with Plaintiff. (*Id*.)

Sergeant Van Der Wall also reviewed the video surveillance from Unit 6 which showed that Plaintiff was let out of his cell by Deputies Phillips and Bush several times on September 5 and 6, 2021. (*Id*. ¶ 12.)

In his response, Plaintiff asserts the activity logs show 5 new inmates housed in cells in Unit 6, which he claims refutes Defendants' contention that there were no open cells to move Plaintiff. (ECF No. 29 at 3-4.) Plaintiff also states in his declaration that when Deputies Bush and Phillips did their security walks, rarely did they stop and check on Plaintiff. Instead, he had to aggressively get the unit porter's attention to flag them down after repeatedly pressing his emergency button with no response. (Pl. Decl., ECF No. 29 at 2 ¶ 2.)

## C. Analysis

It is undisputed that the power was out in Plaintiff's cell which resulted in his not having water in his sink and his toilet not being able to flush for a period of approximately 48 hours between September 5 and 6, 2021. Plaintiff admits his toilet never overflowed, and it was covered with a towel to try and mask the smell, and he could not use the toilet in his cell for those two days. (ECF No. 29 at 1.) Plaintiff claims that Deputies Phillips and Bush did not stop and check on Plaintiff during their security checks, and he had to get the unit porters to flag them down after they did not respond to his pressing his emergency button. (Pl. Decl., ECF No. 29 at 2 ¶ 2.) Plaintiff does not dispute, however, that each deputy on shift during that time period (Phillips, Gould, and Bush) let Plaintiff out of his cell multiple times. Nor does he dispute that he had access to water and the bathroom in the day room when he was let out of his cell, or that he also had access to water and the bathroom in the day room during tier and mealtime.

In addition, Plaintiff does not dispute that Deputy Gould submitted a request to maintenance to address the issues in the four cells, but that maintenance was not scheduled to work over the holiday weekend.

Even accepting as true Plaintiff's statement that there were new inmate arrivals into cells without power issues during this time, the court finds Defendants are entitled to qualified immunity.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

1    "Whether a constitutional right is clearly established is a question of law for the court to
2 decide." *Id.* at 968 (citing *Elder v. Holloway,* 510 U.S. 510, 511 (1994); *Morales v. Fry*, 873
3 F.3d 817, 825 (9th Cir. 2017)). "For a constitutional right to be clearly established, a court must
4 define the right at issue with 'specificity' and 'not … at a high level of generality.'" *Id*. (quoting
5 *City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019) (per curiam)). "'[A] court must ask
6 whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in
7 the situation confronted.'" *Id*. at 969 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017)).
8 "'While there does not have to be a case directly on point, existing precedent must place the
9 lawfulness of the particular [action] beyond debate,'" and must "''squarely govern[ ]' the specific
10 facts at issue[.]" *Id*. (citations omitted). "The plaintiff 'bears the burden of showing that the
11 rights allegedly violated were clearly established.'" *Id*. (quoting *Shafer v. County of Santa
12 Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)).

13    Plaintiff has not pointed to a case, and the court is not aware of one, that temporarily
14 holding an inmate in a cell (for roughly 48 hours) that is without water and a functioning toilet is
15 objectively unreasonable when that inmate nevertheless has other access to water and a bathroom
16 during that time. In other words, it would not have been clear to a reasonable deputy in the
17 position of these deputies that their conduct was unlawful under these circumstances, and
18 summary judgment should be granted in their favor. As a result of this finding, the court need not
19 discuss Defendants' remaining arguments.

### IV. RECOMMENDATION

21    IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**
22 Defendants' motion for summary judgment (ECF No. 26) and enter judgment in Defendants'
23 favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 18, 2023

_____
Craig S. Denney
United States Magistrate Judge